RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 25a0146p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

JAIME B. NORRIS,

                                    *Plaintiff-Appellant,*

         *v.*

COMMISSIONER OF SOCIAL SECURITY,

                                 *Defendant-Appellee.*

> No. 24-3930

_____

Appeal from the United States District Court for the Northern District of Ohio at Cleveland.
No. 1:23-cv-01540—David A. Ruiz, District Judge.

Decided and Filed:  June 3, 2025

Before: COLE, READLER, and RITZ, Circuit Judges.

_____

## COUNSEL

**ON BRIEF:**  Eric S. McDaniel, Matthew J. Kasper, MALYUK MCDANIEL KASPER LLC, Cuyahoga Falls, Ohio, for Appellant.  Brian C. Baak, SOCIAL SECURITY ADMINISTRATION, Baltimore, Maryland, for Appellee.

_____

## OPINION

_____

COLE, Circuit Judge.  An administrative law judge denied Jaime Norris's application for social security disability benefits and supplemental security income after finding that Norris could perform a significant number of jobs in the national economy.  The district court agreed, concluding that substantial evidence supported the decision.  We affirm.

I.

In October 2020, Norris, who was thirty-nine years old, applied for disability benefits and supplemental security income.  Norris asserted that he was disabled and limited in his ability to work because he suffers from several mental and physical disorders, including anxiety, depression, hereditary hemorrhagic telangiectasia, chronic obstructive pulmonary disease, post-traumatic stress disorder, panic disorder, irritable bowel syndrome, migraines, and agoraphobia.  The Social Security Administration denied Norris's claim, prompting him to seek a hearing before an administrative law judge (ALJ).

During the hearing, Norris and a vocational expert testified.  Following the hearing, the ALJ issued a written decision, concluding that Norris was not disabled under the Social Security Act.  *See* 20 C.F.R. § 404.1520(a)(4).  Considering the expert's testimony, the ALJ concluded that Norris could successfully adjust to other jobs that exist in significant numbers in the national economy.

Norris appealed the denial to the Appeals Council, which denied his request for review, finalizing the ALJ's decision.  Norris then filed this civil action, seeking judicial review of the decision.  The district court affirmed the ALJ's decision.

Norris timely appealed.

II.

We review whether the ALJ "applied the correct legal standards and whether the[ir] findings . . . are supported by substantial evidence."  *Hargett v. Comm'r of Soc. Sec.*, 964 F.3d 546, 551 (6th Cir. 2020) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009)); *see also* 42 U.S.C. § 405(g).  A finding is supported by substantial evidence if there is "more than a mere scintilla" of evidence that "a reasonable mind might accept as adequate to support [the] conclusion."  *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (cleaned up).  We do not resolve conflicting testimony or evaluate credibility.  *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001).  We affirm an ALJ's decision if their findings are "reasonably drawn from the record

or supported by substantial evidence, even if that evidence could support a contrary decision." *Elam ex rel. Golay v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003).

## III.

To qualify for disability benefits, a claimant must be disabled under the Social Security Act. 42 U.S.C. § 423(a)(1)(E). An ALJ employs a five-step sequential evaluation process to assess whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof during the first four steps, but the burden shifts to the Commissioner at step five." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). Norris confines his appeal to step five of the ALJ's analysis: whether the claimant can adjust to other work. 20 C.F.R. § 404.1520(a)(4)(v). We limit our analysis accordingly.

To assess whether a claimant can successfully transition to other work, an ALJ must identify the types of jobs the claimant could perform considering their disabilities and determine whether those jobs "exist in significant numbers in the national economy." *Id.* at §§ 404.1560(c)(1), 416.960(c)(1); *see Biestek*, 587 U.S. at 100. There is not "one special number" which separates a significant number of jobs from an insignificant number. *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988). Rather, the decision requires a fact-specific inquiry viewed in the context of each case. *See id.*

Norris argues that the ALJ erred in concluding that he could perform a significant number of jobs in the national economy. First, he charges that this court's precedent incorrectly determined what constitutes a significant number of jobs in the national economy. Next, he asserts that the specific facts of his case and the national economy warrant reversal. And finally, he claims the Commissioner failed to show Norris could transition to other work. We address each argument in turn.

## A.

Norris focuses much of his argument on two of this court's prior decisions: *Taskila v. Commissioner of Social Security*, 819 F.3d 902 (6th Cir. 2016) and *Nejat v. Commissioner of Social Security*, 359 F. App'x 574 (6th Cir. 2009). He contends that these cases erroneously

conflated regional data with national data, "thereby deflating what constitutes 'significant numbers' in the national economy." (Reply Br. 1.)

We acknowledge, as has at least one other court, that *Taskila* and *Nejat* considered "similar local, regional, or state-wide job totals from . . . other cases" when concluding jobs existed in significant numbers in the *national* economy. *Isaac v. Saul*, No. 20-cv-11573, 2021 WL 4770122, at *7 (E.D. Mich. Apr. 29, 2021), *report and recommendation adopted sub nom. Isaac v. Comm'r of Soc. Sec.*, No. 20-11573, 2021 WL 4167211 (E.D. Mich. Sept. 14, 2021). But as the district court noted, "*Taskila* does not establish any sort of bright-line floor or magic number of national jobs that is sufficient to satisfy Step Five." (Mem. Op. and Order, R. 16, PageID 1505.) Instead, the significant numbers inquiry is "a fact question reviewed for substantial evidence." *Taskila*, 819 F.3d at 905. What constitutes a significant number of jobs is determined case by case. *Hall*, 837 F.2d at 275. Without any categorical rule setting the baseline number for a significant number of jobs, *Taskila* and *Nejat* do not dictate the outcome of this case.

Nor can we consider Norris's invitation to overrule *Taskila* because "a panel of this court may not overrule a previous panel's decision." *Meeks v. Ill. Cent. Gulf R.R.*, 738 F.2d 748, 751 (6th Cir. 1984); 6 Cir. R. 32.1(b) ("Published panel opinions are binding on later panels. A published opinion is overruled only by the court en banc."). The Commissioner raised this issue, so on reply, Norris tries to salvage his claim by arguing that the Supreme Court's decision in *Biestek* permits us to modify our approach. *See* 587 U.S. at 106–07; *see also Meeks*, 738 F.2d at 751 ("Only [a]n en banc court may overrule a circuit precedent, absent an intervening Supreme Court decision.").

But *Biestek* is not the shift in caselaw Norris claims it to be. In *Biestek*, the Court concluded that a qualified vocational expert's testimony about the number of jobs available in the national economy may amount to substantial evidence supporting an ALJ's decision. 587 U.S. at 105–08. *Biestek* does not establish a minimum number of jobs that must be available in the national economy, nor does it undermine this court's holding in *Taskila*, which relied on a vocational expert's testimony in finding the ALJ's decision was supported by substantial evidence. *See Taskila*, 819 F.3d at 904–06.

In a final attempt to support his argument that *Taskila* and *Nejat* were incorrectly decided, Norris cites to cases from other circuits, contending that other circuits have decided that even higher ranges of available jobs in the national economy are insignificant. But those cases similarly do not establish a threshold number of jobs to be considered significant.

Regardless, some circuits have concluded that vocational expert testimony stating that similar or lower numbers of jobs were available supports a finding that a significant number of jobs were available in the national economy. *See, e.g.*, *Johnson v. Chater,* 108 F.3d 178, 180 (8th Cir. 1997) (holding that testimony stating there are 10,000 available jobs in the national economy was sufficient); *Young v. Astrue*, 519 F. App'x 769, 772 (3d Cir. 2013) (holding that testimony stating there are 20,000 available jobs in the national economy was sufficient).

In sum, Norris attempts to impose a categorical threshold job number where none exists. We reject his attempt to do so.

B.

Next, we evaluate if the specific facts of his case and the national economy warrant reversal. Norris charges that the *Hall* factors are outdated and argues that courts should consider the percentage of the jobs available to claimants in the national economy, not the total number of available jobs. *See* 837 F.2d at 275. Norris did not discuss the *Hall* factors below. We are not a court of first review, so we are generally unwilling to consider arguments raised for the first time on appeal. *United States v. Ellison*, 462 F.3d 557, 560 (6th Cir. 2006). This is not an exceptional case that requires us to consider this issue in the first instance.

Norris's argument that we should adopt a percentage-based evaluation also fails. We recognize that the number of jobs in the national economy varies. But this court and the Supreme Court have determined that a vocational expert's testimony about the total number of jobs in the national economy available to the applicant may support the denial of benefits. *See Biestek*, 587 U.S. at 105–08; *Taskila*, 819 F.3d at 904. We see no reason to deviate from this practice now.

Here, the ALJ considered the vocational expert's testimony about the number of jobs in the national economy available to Norris.  In doing so, the ALJ applied the correct legal standard under existing law.  *See Hargett*, 964 F.3d at 551.

C.

Finally, we consider whether substantial evidence supports the ALJ's finding that Norris can perform a significant number of jobs in the national economy.  The testimony of a qualified vocational expert may amount to substantial evidence.  *Biestek*, 587 U.S. at 105–08; *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 562 (6th Cir. 2022) ("[A]s *Biestek* suggests, when a qualified vocational expert testifies that a person with the claimant's work experience and physical limitations could perform a significant number of jobs available in the national economy, the ALJ has a solid basis for denying disability benefits.").  Norris argues that the ALJ concluded that 18,800 jobs qualified as a significant number without any explanation or reasoning.  His argument, however, overlooks the ALJ's reliance on the vocational expert's testimony.

During the hearing, the ALJ called a vocational expert to testify.  The ALJ asked the vocational expert whether there were jobs in the national economy for a hypothetical person with Norris's age, education, work experience, and limitations.  The expert proffered three representative jobs, totaling 18,800 jobs in the national economy, that a person could perform at the sedentary level.  Considering the expert's testimony, at step five of the analysis, the ALJ "conclude[d] that, considering [Norris's] age, education, work experience, and residual functional capacity, [he] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy."  (Social Security Admin. R. of Proceedings, R. 7, PageID 75.)

Norris does not challenge the reliability of the expert's testimony.  Instead, he argues that the ALJ declared the vocational expert's stated number of available jobs substantial without discussing the vocational evidence, the facts of the case, or common sense.  But this contention is unsupported by the record.  The ALJ's opinion discussed the vocational expert's testimony, including the jobs available to Norris; verified that the testimony was consistent with the

information available in the Dictionary of Occupational Titles; and concluded this number was significant in the national economy.

As discussed above, the Commissioner bears the burden of proving that a significant number of jobs exist in the national economy. *Wilson*, 378 F.3d at 548. Norris contends that the district court impermissibly shifted this burden from the Commissioner back to Norris. The district court noted that "Plaintiff has not raised any argument—aside from his national numbers based argument—that 18,800 jobs do[es] not constitute a significant number of jobs as applied to the particular facts and circumstances of his case." (Mem. Op. and Order, R. 16, PageID 1505.) Norris argues that "[t]his finding of failure was aimed at the wrong party." (Appellant Br. 26.) But Norris is the party seeking judicial review. Therefore, he is responsible for identifying issues in the ALJ's decision. The district court did not shift the burden of proof to Norris by requiring him to raise the issues for review.

IV.

For the reasons above, we affirm.